WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

**In Admiralty**

DeMore's Montana LLC, et al.,

        Petitioners.

No. CV-21-00730-PHX-DJH

**ORDER**

       This action stems from a July 31, 2020, boat collision on the Colorado River at Lake Havasu that resulted in the deaths of Jim Dolson, Sean Crow and Shawn Fasulkey. Petitioners DeMore's Montana LLC (9 Kids, LLC) and Mr. Michael DeMore (collectively "Petitioners") have filed a "Motion for Summary Judgment for Exoneration or in the Alternative, Motion for Patrial Summary Judgment Limiting Damages" (Doc. 93)[1] against Claimants, who are the respective representatives of Jim Dolson, Sean Crow and Shawn Fasulkey.

       Petitioners seek complete exoneration from liability for all claims arising out of the collision under 46 U.S.C. § 181 *et. seq.* and Federal Rule of Civil Procedure 9 of the Supplemental Admiralty Rules. (*Id.*) Alternatively, if any genuine issues of material fact preclude exoneration, Petitioners request partial summary judgment limiting the boat owner's liability to the value of the boat on the grounds that he lacked privity or knowledge of any claimed negligence by the boat operator.

---

[1] The matter is briefed. Claimants filed their Responses (Docs. 94; 95; 96), and Petitioners filed their Replies (Docs. 100; 101; 102).

Because Claimants have demonstrated there are genuine issues of material fact exist as to what acts of negligence caused the accident, the Court denies Petitioners' Motion.

## I. Background[2]

Petitioners have brought an action to exonerate or limit their liability under the Limitation of Liability Act, 46 U.S.C. § 181 *et. seq* ("Limitation Act") for any claims against them arising from a boating accident in which three persons perished.

The accident occurred on the Colorado River at Lake Havasu and resulted in the deaths of Jim Dolson, Sean Crow, and Shawn Fasulkey. (Doc. 93-1 at 2-3). Two boats were involved in the collision—the MTI and the Eliminator. Mr. Michael DeMore ("DeMore") owns the MTI but at the time of the accident Mr. Brandon Bond ("Mr. Bond") was operating it. Mr. Jim Dolson ("Mr. Dolson") was operating the Eliminator. (*Id*. at 98).

The accident occurred at 7:00 p.m. on July 31, 2020. (*Id.* at 210). At that time, Mr. DeMore was asleep below deck and Mr. Bond was operating the MTI. (*Id.* at 115). Mr. Bond attempted to pass the Eliminator on its left side. (*Id.* at 144). As Mr. Bond attempted to pass, the Eliminator made an abrupt left turn toward the MTI. (*Id.* at 178). Mr. Bond then turned left while simultaneously putting the motor in reverse. (*Id.* at 144–145). Despite Mr. Bond's attempt to avoid a collision, the Eliminator struck the middle of the MTI's right side. (*Id.* at 4).

In April 2021, DeMore filed a Complaint for exoneration from or limitation of liability under the Limitation Act (Doc. 1). In July 2021, Claimants filed their Answers (Docs. 9, 11, 12), raising numerous affirmative defenses and two counterclaims: a wrongful death claim and a survival claim. (*Id.*)

In January 2023, Petitioners moved for summary judgment, arguing Mr. Dolson's impaired operation of the Eliminator was the sole cause of the accident. (Doc. 93 at 1). Claimants oppose, arguing there are factual disputes as to what acts of negligence caused

---

[2] Unless otherwise noted, the following facts are undisputed.

the accident. (Docs. 94; 95; 96).

## II. Legal Standard

A court will grant summary judgment if the movant shows there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). A factual dispute is genuine when a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Here, a court does not weigh evidence to discern the truth of the matter; it only determines whether there is a genuine issue for trial. *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1131 (9th Cir. 1994). A fact is material when identified as such by substantive law. *Anderson*, 477 U.S. at 248. Only facts that might affect the outcome of a suit under the governing law can preclude an entry of summary judgment. *Id.*

The moving party bears the initial burden of identifying portions of the record, including pleadings, depositions, answers to interrogatories, admissions, and affidavits, that show there is no genuine factual dispute. *Celotex*, 477 U.S. at 323. Once shown, the burden shifts to the non-moving party, which must sufficiently establish the existence of a genuine dispute as to any material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986). The evidence of the non-movant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. But if the non-movant identifies "evidence [that] is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 249–50 (citations omitted). "A conclusory, self-serving affidavit, lacking detailed facts and any supporting evidence, is insufficient to create a genuine issue of material fact." *F.T.C. v. Publ'g Clearing House, Inc.*, 104 F.3d 1168, 1171 (9th Cir. 1997).

## III. Discussion

Petitioners seek to exonerate or limit their liability under the Limitation Act for any claims against them. (Doc. 93). The Court first considers the threshold matter of subject matter jurisdiction. The Court will then turn to the applicable law and

Petitioners' request for exoneration under the Limitation Act.

### A. Jurisdiction

A district court has jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333. The Ninth Circuit applies a two-prong test of "location and connection" to determine whether "an alleged tort involving a pleasure craft . . . forms the proper basis for maritime tort subject matter jurisdiction." *H2O Houseboat Vacations Inc. v. Hernandez*, 103 F.3d 914, 916 (9th Cir. 1996).

The first location prong requires that the incident occurred on navigable water. *Id.* The Ninth Circuit has established that Lake Havasu is a navigable waterway. *Id.*; *see also In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d 993, 996 (D. Ariz. 2006). The first prong is satisfied.

The second connection prong entails two inquiries: (1) "whether the incident involved was of a sort with the potential to disrupt maritime commerce;" and (2) "whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity." *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). The first inquiry concerns the "potential effects" of the incident. *Id.* at 538. The second inquiry concerns "whether a tortfeasor's activity . . . is so closely related to activity traditionally subject to admiralty law that the reasons for applying special admiralty rules would apply." *Id.* at 539.

The Court finds both inquiries are satisfied. First, a collision of two boats in a populated area of Lake Havasu has the potential to disrupt maritime commerce. *Id.* at 538; *see also In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 996 (finding injury to a person who has fallen overboard on Lake Havasu could lead to maritime disruption); *Complaint of Salas*, 437 F. Supp. 3d 740, 744 (D. Ariz. 2019) (same). Second, the Supreme Court has found the "[n]avigation of boats in navigable waters" falls under activities related to admiralty. *Id.* at 540. Mr. Bond's navigation of the MTI is sufficient to satisfy the second inquiry. Accordingly, the Court concludes the incident at issue meets the "connection" and "location" prongs of the jurisdiction test, and

the Court has subject matter jurisdiction under 28 U.S.C. § 1333.  *See In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 997.

### B. Applicable Law

Finding jurisdiction, the Court now considers which body of law governs this case. The parties dispute whether federal admiralty law preempts Arizona state law. Petitioners argue Arizona law controls and thus the federal Inland Navigation Rules ("Inland Rules") are inapplicable.  (Doc. 93 at 10).  Claimants argue Arizona law may supplement the Inland Rules but cannot displace the Inland Rules or conflict with them. (Doc. 95 at 12).  Claimants further argue that the collision occurred on the California side of the Colorado River and the Claimants are California residents so even if the Inland Rules did not preempt state law, California law applies.  (Doc. 96 at 14).

Federal admiralty law preempts state law, but federal courts may apply state law by express or implied reference where the federal admiralty law is incomplete.  *See Meador v. Aramark Sports & Ent. Servs. LLC*, 562 F. Supp. 3d 221, 227 (D. Ariz. 2022) (citation omitted).  "[T]he general rule on preemption in admiralty cases is that states may supplement federal admiralty law as applied to matters of local concern, so long as state law does not *actually conflict* with federal law or *interfere* with the *uniform working* of the maritime legal system."  *Pacific Merchant Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990) (emphasis in original).

A recent interim rule issued by the U.S. Coast Guard clarified that conflict preemption is the appropriate analysis when determining whether the Inland Rules preempt state regulations.  It stated:

> The purpose of this interim rule is to correct an error in Title 33 of the Code of Federal Regulations (CFR) part 83, specifically in paragraph (a) of § 83.01, about the preemptive effect of the navigation regulations upon State or local regulation.
>
> Field preemption means that State and local governments may not regulate in that field at all. This is distinct from conflict preemption, which allows State and local government to regulate so long as their actions do not conflict with Federal regulations. Without express guidance from Congress,

conflict preemption is the foundation for the relationship between the laws of the Federal government and those of the States. *See Arizona v. United States*, 567 U.S. 387 (2012).

**This rule removes the final sentence of 33 CFR 83.01(a), which states that regulations in 33 CFR parts 83 through 90 have preemptive effect over State or local regulation within the same field**. Removing the final sentence clarifies the original statutory language of Rule 1. This rule does not insert any other statement about preemption. This is consistent with prior versions of the Inland Rules, which were also silent on the subject and were historically viewed as conflict preemptive.

Generally, under the Supremacy Clause of the U.S. Constitution, States are precluded from regulating conduct in a certain field (i.e., field preemption applies) where a statute contains an express preemption provision, or when Congress has determined that conduct in a particular field must be regulated by its exclusive governance. *Arizona*, 567 U.S. at 399. "The intent to displace state law altogether can be inferred from a framework of regulation so pervasive . . . that Congress left no room for the States to supplement it, or where there is a federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject." *Id.* (internal quotations omitted).

In the case of inland navigation, nothing in the relevant statutory enactments by Congress has ever expressly stated or otherwise implied that the States are preempted from regulating in the field. **Rather, the appropriate analysis is one of conflict preemption**. Under conflict preemption, State law is preempted by Federal law only when compliance with both the State law and a Federal law is impossible, or the State law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress. *See Arizona*, 567 U.S. 387.

State regulation in the field of inland navigation is clearly evidenced by the longstanding existence of many State navigation laws and rules around the country, and by Congress' demonstrated awareness of such laws and rules and its lack of action to preempt them.

. . .

While Congress has legislated in this area, it has not created a pervasive or dominant framework that indicates any intent to preclude states from regulating or enforcing their own laws and rules. **Accordingly, state and local rules are preempted only in the instances described above: where compliance with both a State requirement and a federal requirement is**

> **impossible, or where the State law stands as an obstacle to the accomplishment and execution of the full purposes and objective of Congress.**
>
> . . .
>
> **Removing the incorrect language about field preemption does not alter the obligations of the boating public. They have always been required to comply with the Inland Rules in 33 CFR parts 83 through 90.**

33 C.F.R. Part 83 (emphasis added).

In *Meador v. Aramark Sports & Ent. Servs. LLC*, the parties disputed this same issue, with defendants arguing the Inland Rules preempted Arizona and Utah state boating laws. 562 F. Supp. 3d at 232. This district rejected defendants' argument:

> In *St. Hilaire Moye v. Henderson*, the case on which Defendant relies to advance its preemption argument, the Eighth Circuit acknowledged that federal courts sitting in admiralty need not "invariably refuse to recognize and enforce a liability which the State has established in dealing with a maritime subject." 496 F.2d 973, 980 (8th Cir. 1974), *cert. denied* 419 U.S. 884, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974), quoting *Just v. Chambers*, 312 U.S. 383, 387-88, 61 S.Ct. 687, 85 L.Ed. 903 (1941). Moreover, *St. Hilaire Moye* is distinguishable. In that case, the Eighth Circuit found that application of an Arkansas statute, which imposed a "willful and wanton" standard for recovery, would disrupt the uniformity of the admiralty law, and was in direct conflict with the federal negligence standard. *Id.* at 981. The Court also noted that the Arkansas rule would "defeat the rights of persons injured by the negligence of boat operators on navigable waters." *Id.* In fact, it is this portion of the reasoning in *St. Hilaire Moye* that courts have most often applied. *See, e.g.*, *Byrd v. Byrd*, 657 F.2d 615, 617-18 (4th Cir. 1981) (reasoning that a state law should not be applied where it would "defeat an otherwise meritorious maritime cause of action."). Here, the Arizona and Utah laws are not in direct conflict with the Inland Rules, nor do they function to defeat a federal right of recovery. It follows that these laws are not preempted. However, Navajo Canyon sits in Arizona, so Arizona law, not Utah law, is relevant to the instant matter.

*Id.* at 232.

This Court finds the reasoning from the *Meador* court persuasive. Claimants neither argue, nor does this Court find, that Arizona law is in direct conflict with the

- 7 -

Inland Rules. Arizona law also does not interfere with the uniform working of the maritime legal system. Thus, Arizona law is not preempted by the Inland Rules. At the same time, the Court rejects Petitioners' argument that the Inland Rules are altogether inapplicable because the Arizona Legislature has "clearly adopted the Arizona Boating Laws (Title 5), which are the laws that apply on Lake Havasu." (Doc. 93 at 11). While true, this does not render the Inland Rules entirely inapplicable. In fact, the *Meador* court found the Inland Rules did not preempt Arizona law, but nonetheless concluded certain Inland Rules applied and imposed a duty on the defendants. Following suit, the Court finds Arizona law may supplant, but does not displace the Inland Rules.[3] *Pacific Merchant Shipping Ass'n*, 918 F.2d at 1422; *Garcia v. Vitus Energy*, LLC, 605 F. Supp. 3d 1188, 1200 (D. Alaska 2022) (noting that "a fundamental feature of maritime law is that federal admiralty courts sometimes do apply state law and state law may be used to supplement federal maritime law so long as state law is compatible with substantive maritime policies") (internal quotations and citations omitted).

### C. Exoneration and Limitation of Liability

Finding both the Inland Rules and Arizona law apply, the Court will now consider whether Petitioners are eligible for exoneration under the Limitation Act. Because Claimants have met their burden of demonstrating there is a factual dispute as to whether Mr. Bond is liable for their losses, Petitioners are not eligible for exoneration and their Motion will be denied.

#### 1. The Limitation Act

The Limitation Act limits a shipowner's liability for any damages arising from a maritime accident to the value of the vessel and its freight, provided that the accident occurred without the owner's "privity or knowledge." 46 U.S.C. § 30505. Supplemental Rule F provides that a complaint brought under the Limitation Act "may demand exoneration from as well as limitation of liability." *In re Fun Time Boat Rental &*

---

[3] Because *Meador* contained similar circumstances to the dispute here, the Court need not determine whether California law applies. In any event, Claimants' briefing focuses exclusively on Mr. Bond's Inland Rule violations. (Docs. 94, 95, 96).

- 8 -

*Storage, LLC*, 431 F. Supp. 2d at 997.

Where, as here, a shipowner asserts a claim for exoneration under the Limitation Act, a two-step "burden-shifting framework is employed to evaluate the shipowner's eligibility for limited liability." *Id.* Under the first step, the Court must determine what acts of negligence caused the accident. *See Brand v. United States*, 2017 WL 1736801, at *2 (D. Ariz. May 4, 2017). The Claimants bear the initial burden of demonstrating that the shipowner is liable for their losses. *Id.* Claimants may demonstrate the shipowner is liable by either showing (1) the owner's negligence or (2) the unseaworthiness of the boat. *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 997 (citing *Walston v. Lambertsen*, 349 F.2d 660, 663 (9th Cir. 1965)). "If the claimants fail to establish liability, then the shipowner is entitled to exoneration and there is no need to consider the limitation claim." *Id.* (citing *In the Matter of Hechinger*, 890 F.2d 202 (9th Cir. 1989)). Second, "[o]nly if liability is established does the burden shift to the shipowner to establish its lack of privity or knowledge." *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 997.

### 2.     DeMore's Negligence

Claimants rely on a theory of negligence to show Mr. DeMore is liable for the collision. Petitioners argue Claimants failed to produce any evidence as to Mr. Bond's negligence and that Mr. Dolson's impairment and failure to maintain course and speed while being overtaken by the MTI were the sole causes of the accident. (Doc. 93 at 11). Claimants argue there are genuine issues of material fact with respect to Mr. Bond's negligence and his role in bringing about this accident. (Doc. 94 at 11). The elements of negligence in an admiralty action are generally the same as in a common law negligence action—that is, Claimants must establish: (1) DeMore had a duty of reasonable care; (2) that duty was breached; (3) causation; and (4) damages. *See Samuels v. Holland Am. Line-USA, Inc.*, 656 F.3d 948, 953 (9th Cir. 2011).

As explained below, Petitioners' exoneration cannot be resolved through summary judgment because the evidence of record, when viewed in favor of the Claimants as the

non-moving parties, establishes that there are genuine issues of material fact as to whether Mr. Bond's breach of the Inland Rules caused the two-boat collision. As a result, the Court cannot determine as a matter of law the first step in the limitation of liability analysis.

### a. Duty

In admiralty, a party's duty of care can be derived from "(1) duly enacted laws, regulations, and rules; (2) custom; or (3) the dictates of reasonableness and prudence." *Meador*, 562 F. Supp. 3d at 227 (citations omitted). The Inland Rules of Navigation, 33 C.F.R. § 83.01 *et seq.*, provide "rules of the road" that apply "to all vessels upon the inland waters of the United States[.]" 33 U.S.C. § 2071; 33 C.F.R. § 83.01(a). In general, maritime law imposes a standard of "reasonable care under the circumstances." *See, e.g., Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1347 (9th Cir.1985).

The Court already found the Inland Rules apply. So, Mr. DeMore had a duty of reasonable care as the owner of the MTI. This same duty extends to Mr. Bond as the driver of the MTI.

### b. Breach

Claimants argue Mr. Bond violated Inland Rules 5, 6, 7, 8, 9, 13, 16, and 34. (Doc. 96 at 13–17). They say Mr. Bond's failure to follow these Rules creates genuine issues of material fact about his role in causing the accident. (*Id.* at 13–17). Petitioners do not raise specific arguments as to each of the Inland Rules. Instead, Petitioners generally argue the Inland Rules are inapplicable and urge the Court to apply Arizona law. As discussed, however, the Court finds the Inland Rules apply here. Last, Petitioners argue that even if Claimants raised a factual dispute as to Mr. Bond's breach of duty, Claimants recovery is nonetheless barred by the causation hurdle under the Pennsylvania Rule. (Doc. 93 at 12).

The Court will first consider the Inland Rules and then turn to whether the Pennsylvania Rule bars Claimants' recovery. The Court ultimately finds there are genuine issues of material fact as to whether Mr. Bond's violations of the Inland Rules

1 caused the two-boat collision. So, summary judgment is inappropriate.

### i. Rule 5: Look Out

Claimants argue Mr. Bond violated Rule 5,[4] which provides that "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." 33 C.F.R. § 83.05. Claimants' expert, Mr. Mark Poster ("Poster"), stated Mr. Bond violated Rule 5 when Mr. Bond lost sight of the Eliminator while overtaking it. (Doc. 96-1 at 24). Mr. Bond also admitted in his deposition that he lost visual contact with the Eliminator, albeit for "half a second," after the Eliminator abruptly turned left. (*Id.* at 15).

Thus, a dispute of fact exists as to whether Mr. Bond's visual impairment was a cause of the collision.

### ii. Rule 6: Safe Speed

Claimants argue Mr. Bond violated Rule 6, which provides that "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." 33 C.F.R. § 83.05. Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 6 when Mr. Bond failed to reduce his speed while overtaking the Eliminator. (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's speed was a cause of the collision.

### iii. Rule 7: Risk of Collision

Claimants argue Mr. Bond violated Rule 7, which provides that "[e]very vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist." 33 C.F.R. § 83.07. Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 7 when Mr. Bond sought to overtake the Eliminator at close range and disregarded the

---

[4] Unless where otherwise stated, all Rule references are to the Inland Rules of Navigation.

- 11 -

potential risk of collision that existed. (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's overtaking of the Eliminator at close range was a cause of the collision.

### iv. Rule 8: Action to Avoid Collision

Claimants argue Mr. Bond violated Rule 8, which provides that "[a]ny action taken to avoid collision shall be taken in accordance with the Rules of this subpart . . . and shall, if the circumstances of the case admit, be positive, made in ample time and with due regard to the observance of good seamanship." 33 C.F.R. § 83.08(a). It further states, "[i]f necessary to avoid collision or allow more time to assess the situation, a vessel shall slacken her speed or take all way off by stopping or reversing her means of propulsion." 33 C.F.R. § 83.08(e). Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 8 when Mr. Bond's attempted turn was ineffective. (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's turn was made in enough time to avoid the collision.

### v. Rule 9: Narrow Channels

Claimants argue Mr. Bond violated Rule 9, which provides that "[i]n a narrow channel or fairway when overtaking, the power-driven vessel intending to overtake another power-driven vessel shall indicate her intention by sounding the appropriate signal prescribed in Rule 34(c) (§83.34(c)) and take steps to permit safe passing. The power-driven vessel being overtaken, if in agreement, shall sound the same signal and may, if specifically agreed to, take steps to permit safe passing. If in doubt she shall sound the signal prescribed in Rule 34(d) (§83.34(d))." 33 C.F.R. § 83.09(e)(i). Rule 9 further states that "[t]his Rule does not relieve the overtaking vessel of her obligation under Rule 13 (§ 83.13)." 33 C.F.R. § 83.09(e)(ii). Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 9 when Mr. Bond provided no warning signal while attempting to overtake the Eliminator. (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's lack of warning signal was a cause of the collision.

### vi. Rule 13: Overtaking

Claimants argue Mr. Bond violated Rule 13, which provides that "any vessel overtaking any other shall keep out of the way of the vessel being overtaken." 33 C.F.R. § 83.13(a). "Any subsequent alteration of the bearing between the two vessels shall not make the overtaking vessel a crossing vessel . . . or relieve her of the duty of keeping clear of the overtaken vessel until she is finally past and clear."  33 C.F.R. § 83.13(d). Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 13 when Mr. Bond failed to consider any unexpected maneuvers by the Eliminator.  (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's failure to consider any unexpected maneuvers by the Eliminator was a cause of the collision.

### vii. Rule 16: Action by Give-way Vessel

Claimants argue Mr. Bond violated Rule 16, which provides that "[e]very vessel which is directed to keep out of the way of another vessel shall, so far as possible, take early and substantial action to keep well clear." 33 C.F.R. § 83.16.  Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 16 when Mr. Bond did not keep well clear of the Eliminator or take early and substantial action to stay well clear.  (Doc. 96-1 at 24).

Thus, a dispute of fact exists as to whether Mr. Bond's failure to stay clear of the Eliminator was a cause of the collision.

### viii. Rule 34: Maneuvering and Warning Signals

Claimants argue Mr. Bond violated Rule 34, which provides that:

> [w]hen in sight of one another, (i) A power-driven vessel intending to overtake another power-driven vessel shall indicate her intention by the following signals on her whistle: (1) One short blast to mean 'I intend to overtake you on your starboard side'; (2) Two short blasts to mean 'I intend to overtake you on your port side'; and (ii) The power-driven vessel about to be overtaken shall, if in agreement, sound a similar sound signal. If in doubt she shall sound the signal prescribed in paragraph (d) of this Rule.

33 C.F.R. § 83.34(c).  Claimants' expert, Mr. Poster, stated Mr. Bond violated Rule 34 when Mr. Bond failed to blow a horn or whistle while attempting to overtake the Eliminator.  (Doc. 96-1 at 24).

Mr. Poster further opined that "the primary cause of the collision was [Bond]'s failure to follow the Inland Navigation Rules, primarily Rule 13 Overtaking. The law imposes the majority of the responsibility and risk on the overtaking vessel, [Mr. Bond] in this instance." (Doc. 96-1 at 21). Mr. Poster noted that during Mr. Bond's deposition, he admitted he "made no effort to further educate himself on boating safety or the Navigation Rules." (*Id.* at 26(e)). Mr. Poster thus concluded Mr. Bond failed "to use reasonable care under the circumstances prior to and during the time of the crash to avoid injury to the occupants of [the Eliminator]." (*Id.* at 26(f)).

In short, a long list of disputed factual questions regarding Mr. Bond's Inland Rule violations prevents granting summary judgment in Petitioners' favor. The Court's function on summary judgment is to determine whether there is a genuine issue for trial. In doing so, the Court may not make credibility determinations, weigh the evidence, or draw legitimate inferences from the facts because those functions are reserved for the trier of fact. *Anderson*, 477 U.S. at 249-252.

Thus, the Court concludes Claimants' expert evidence regarding the negligence prong of the limitation of liability defense is sufficient to defeat Petitioners' request for summary judgment. *Thomas v. Newton International Enterprises*, 42 F.3d 1266, 1270 (9th Cir. 1994) ("Expert opinion evidence is itself sufficient to create a genuine issue of disputed fact sufficient to defeat a summary judgment motion."); *In re Worlds of Wonder Securities Litigation*, 35 F.3d 1407, 1425 (9th Cir. 1994) ("As a general rule, summary judgment is inappropriate where an expert's testimony supports the non-moving's party's case.").

### c.  Causation and The Pennsylvania Rule

Petitioners argue that even if Claimants raised a factual dispute as to Mr. Bond's breach of duty, Claimants recovery is nonetheless barred by the causation hurdle under the Pennsylvania Rule. (Doc. 93 at 12).

The Pennsylvania Rule provides that "if a vessel involved in an accident violated a statute or regulation intended to prevent such an incident, it is presumed that the ship

owner was at fault, and the burden of proving causation shifts to the ship owner." *MacDonald v. Kahikolu, Ltd.*, 581 F.3d 970, 973 (9th Cir. 2009); *see also The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148 (1873). The violating party may rebut the presumption of cause only "by a clear and convincing showing of no proximate cause." *Trinidad Corp. v. S.S. Keiyoh Maru*, 845 F.2d 818, 825 (9th Cir. 1988). The Pennsylvania Rule is an evidentiary presumption "designed to fill a factual vacuum," and should not be applied where "the parties have introduced evidence to dispel the mysteries that gave rise to the presumption." *Meador*, 562 F. Supp. 3d at 241 n.9 citing *In re Mid-S. Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005) ("[w]here presumptions clash, they disappear"). "Even when the Pennsylvania Rule applies, a party may avoid summary judgment by pointing to any genuine dispute about the other's partial liability, even if one party 'was significantly more at fault for the accident' than the other." *Moreno v. Ross Island Sand & Gravel Co.*, 2015 WL 5604443, at *22 (E.D. Cal. Sept. 23, 2015) (citations omitted).

Petitioners argue Mr. Dolson violated A.R.S. §5-345(C) and (2) A.R.S. §5-395[5] and that Mr. Dolson's *per se* violation of these laws create the presumption that he caused the accident under the Pennsylvania Rule. (Doc. 93 at 12–13). Claimants, on the other hand, argue that there are genuine issues of material fact as to whether Mr. Bond's breach

---

[5] A.R.S. §5-345(C) states "[o]perators of watercraft may pass on either side of any other watercraft overtaken, but the passing operator shall be responsible for the wake of the watercraft which might cause damage to overtaken watercraft or danger to occupants of overtaken watercraft. The overtaken watercraft shall maintain course and speed until such time as the overtaking watercraft is clear. Watercraft approaching head-on shall pass port side to port side where practical to do so."

A.R.S. §5-395(A) states "[it] is unlawful for any person to operate or be in actual physical control of a motorized watercraft that is underway within this state under any of the following circumstances:

1. While under the influence of intoxicating liquor, any drug, a vapor releasing substance containing a toxic substance or any combination of liquor, drugs or vapor releasing substances if the person is impaired to the slightest degree.

2. If the person has an alcohol concentration of 0.08 or more within two hours of operating or being in actual physical control of the motorized watercraft and the alcohol concentration results from alcohol consumed either before or while operating or being in actual physical control of the motorized watercraft.

of the Inland Rules caused the collision. (Doc. 96 at 14–17).

Because factual disputes exist as to both parties' negligent acts, the presumption "would apply in both directions . . . cancelling out any impact." *See In re Mid-S. Towing Co.*, 418 F.3d at 534 n.15. Even if the presumptions do not clash, Claimants have pointed to factual disputes as to Bond's partial liability for the collision and thus summary judgment is inappropriate. *See Moreno*, 2015 WL 5604443, at *22 (noting that "[m]aritime negligence cases are rarely resolved at summary judgment; whether the parties acted reasonably is ordinarily a question for the fact-finder") (citing *Christensen v. Georgia–Pac. Corp.*, 279 F.3d 807, 813 (9th Cir. 2002)).

### 3. DeMore's Lack of Privity and Knowledge

Under the second step of the Limitation Act's framework, the shipowner must establish its lack of privity or knowledge, but "[o]nly if liability is established[.]" *In re Fun Time Boat Rental & Storage, LLC*, 431 F. Supp. 2d at 997. Here, there are genuine disputes of material fact as to whether Mr. Bond acted negligently in the first instance and thus liability cannot be established. The Court therefore need not reach the "privity and knowledge" second step of the analysis at this time.

## IV. Conclusion

In sum, the limitation of liability issue cannot be resolved through summary judgment because the evidence of record, viewed in favor of Claimants, establishes that there are genuine issues of material fact as to Mr. Bond was negligently responsible for causing the two boats to collide. Therefore, the Court cannot determine as a matter of law what acts of negligence caused the collision and Petitioners' request for summary judgment is denied.

Accordingly,

**IT IS HEREBY ORDERED** that the DeMore Petitioners' Motion for Summary Judgment (Doc. 93) is **denied**.

**IT IS FURTHER ORDERED** that that in light of the denial of the Motion for Summary Judgment, the parties are directed to comply with Paragraph 10 of the Rule 16

Scheduling Order (Doc. 23 at 6–7) regarding notice of readiness for pretrial conference.

**IT IS FINALLY ORDERED** that the parties shall indicate when assistance from the Court is needed in seeking settlement of the case. Upon a joint request by the parties, the Court will refer the matter for a settlement conference before a Magistrate Judge.

Dated this 1st day of September, 2023.

Honorable Diane J. Humetewa
United States District Judge