1   **WO**

2

3

4

5

6              **IN THE UNITED STATES DISTRICT COURT**

7                **FOR THE DISTRICT OF ARIZONA**

8

9   In Admiralty                                    No. CV-21-00730-PHX-DJH
    DeMore's Montana LLC, et al.,
10                                                  **ORDER**
                    Petitioners.
11

12

13

14          The Court is in receipt of the parties' supplemental briefs[1]  regarding three

15  complaints that Claimants recently filed in California state court.  (*See* Docs. 106-2; 106-

16  3; 106-4) (the "California Actions").  The parties dispute whether the California Actions

17  violate the Court's May 21, 2021, Order (Doc. 7) staying further prosecution of any and

18  all claims against the vessel owner (the "Stay Order").  The Court finds they do, and will

19  exercise its discretion to stay the California Actions until the present matter is resolved.

20  **I.      Background[2]**

21          This action stems from a July 31, 2020, boat collision on the Colorado River at

22  Lake Havasu between the MTI and the Eliminator vessels (the "Collision").   The

23  Collision resulted in the deaths of Jim Dolson ("Mr. Dolson"), Sean Crow, and Shawn

24  Fasulkey.  Claimants are the estate representatives of Mr. Dolson, Sean Crow and Shawn

25  Fasulkey, respectively.   Petitioners Michael DeMore ("Mr. DeMore") and DeMore's

26  Montana LLC ("9 Kids, LLC") (collectively "Petitioners") own the MTI vessel.

27  ---
    [1] Claimants' Brief is at (Doc. 109) and Petitioners' Response is at (Doc. 110).

28  [2] The Court's prior Order contains extensive background information, and the Court will
    not repeat it here.  (*See* Doc. 103 at 2–3).

(Doc. 1 at ¶ 1).  Mr. Brandon Bond ("Mr. Bond") was operating the MTI vessel at the time of the Collision.  (*Id*. at ¶ 6).  Mr. Dolson was operating the Eliminator vessel at the time of the Collision.  (*Id*. at ¶ 3).

In April 2021, Petitioners filed a Complaint (Doc. 1) to exonerate or limit their liability for the Collision under the Limitation of Liability Act, 46 U.S.C. §§ 30501 (2023) *et. seq* (the "Act") (the "Exoneration Action").  Petitioners alleged the damages resulting from the Collision "were not caused by or contributed to by any fault, neglect, or negligence of Petitioner[s], or any person for whose acts Petitioner[s] [are] responsible." (*Id*. at 4).  They maintained "the MTI was seaworthy at all times, and said claimed damages were done, occasioned, or incurred by acts or events that occurred without the or knowledge, actual or imputed, of Petitioner, its managing agents or its managing officers." (*Id*.)

The Court subsequently issued the Stay Order as follows:

> [T]he institution or prosecution of any and all suits, actions or legal proceedings, against Petitioners, whether presently ongoing, filed but unknown, or to be filed in the future, except in this proceeding, with respect to any claims for injuries or damages arising out of, resulting from, or in any manner connected with, that which the Complaint in this action seeks exoneration from, or limitation of, liability, are stayed and restrained until the hearing and final determination of this proceeding.

(*Id*. at 2); *see* 46 U.S.C. § 30529(a); *see* Fed. R. Civ. P. F(3).

In July 2020, Claimants each filed Answers to Petitioners' Exoneration Action, asserting counterclaims against Petitioners for wrongful death and survival actions under California and Arizona statutes.  (Docs. 9 at 14; 11 at 13; 12 at 13).  Claimants maintained Petitioners "were acting by and through their agents, servants, workmen, employees, and/or ostensible agents, including but not limited to Brandon Bond." (Docs. 9 at 10; 11 at 9; 12 at 9).

In January 2023, Petitioners filed a Motion for Summary Judgment arguing they are entitled to exoneration because Mr. DeMore and Mr. Bond were not negligent and the MTI vessel was seaworthy.  (Doc. 93).

- 2 -

1
2
3
4
5
6
7

In July 2023, Claimants filed the following three complaints in San Bernardino County Superior Court in California: (1) the estate of Mr. Dolson brought suit against Mr. Bond (Doc. 106-2); (2) the estate of Sean Crow brought suit against Mr. Bond and the estate of Mr. Dolson (Doc. 106-3); and (3) the estate of Shawn Fasulkey brought suit against Mr. Bond and the estate of Mr. Dolson. The California Actions seek to hold Mr. Bond liable through his capacity as "operator" of the MTI vessel at the time of the Collision.[3]  (Docs. 106-2 at ¶ 9–14; 106-3 at ¶¶ 13–17; 106-4 at ¶ 8, 14–20).

8
9
10
11
12
13
14
15
16
17
18
19

In September 2023, the Court denied Petitioners summary judgment in the Exoneration Action because it could not determine as a matter of law whether or not Petitioners were negligent and therefore liable for the Collision. (Doc. 103). Claimants had met their burden in demonstrating genuine disputes of material fact existed as to what acts of negligence caused the Collision, including the manner in which Mr. Bond acted as operator of the MTI vessel. (*Id.* at 9–14). This finding made it unnecessary for the Court to reach the second prong of the analysis, which examines whether the accident occurred without the Petitioners' privity or knowledge. (*Id.* at 16). The Court accordingly directed the parties to prepare for their Final Pretrial Conference, initially set for November 14, 2023. (Doc. 103). In their pretrial notices (Docs. 106; 107), the parties dispute whether the California Actions violate the Stay Order. The Court ordered supplemental briefing on the issue. (Doc. 108).

20
**II.    Discussion**

21
22
23
24
25
26

At issue is the impact of Claimants' state court filings on this matter, and specifically, whether the initiation of those matters violates the terms of the Stay Order. The Court concludes the California Actions violate the Stay Order and should be stayed pending the Exoneration Action. Although Claimants filed the California Actions against Mr. Bond through his capacity as operator of the MTI vessel, the Stay Order applies to the California Actions because there is sufficient evidence that Mr. Bond is an "owner"

27
28

[3] The California Actions brought by the estates of Sean Crow and Shawn Fasulkey also seek to hold the estate of Mr. Dolson liable through Mr. Dolson's role as operator of the Eliminator at the time of the Collision. (Docs. 106-3 at ¶¶ 11–17; 106-4 at ¶ 10, 12–20).

1   as that term is defined under the Act.  Furthermore, the California Actions should be

2   stayed to balance the purposes of the Limitation Liability Act and a victim's right to a

3   trial by jury.

4   **A.     The California Actions Violate the Stay Order**

5         Claimants contend Mr. Bond is neither a Petitioner, vessel owner, nor crew

6   member, and so the Stay Order does not apply to the California Actions brought against

7   him.  (Doc. 109 at 6).    Petitioners argue the Stay Order reaches Mr. Bond because he is

8   a vessel owner for the purposes of the Limitation of Liability Act and a crew member

9   within the language of the Stay Order.  (Doc. 110 at 1–4).  The Court will first provide an

10  overview of the Act before addressing the parties' arguments.

11  **1.     Civil Actions Under the Limitation of Liability Act**

12        The purpose of the Limitation Liability Act "is to encourage shipbuilding, to

13  promote investment in ships and employment of ships in commerce, and to place

14  American shipping interests on an equal footing with that of other maritime nations."

15  *Complaint of Paradise Holdings, Inc.*, 795 F.2d 756, 761 (9th Cir. 1986).  To that end,

16  the Act "limits shipowner liability arising from the unseaworthiness of the shipowner's

17  vessel or the negligence of the vessel's crew unless the condition of unseaworthiness or

18  the act of negligence was within the shipowner's privity or knowledge."  *W. Pioneer, Inc.*

19  *v. Int'l Specialty, Inc. (In re BOWFIN M/V)*, 339 F.3d 1137, 1138 (9th Cir. 2003) (per

20  curiam) (internal quotations omitted); *see* 46 U.S.C. § 30523.  Title 46[4] defines the term

21  "owner" to mean "the person to whom the vessel belongs."  46 U.S.C. § 10101.  The Act

22  further defines the term "owner" to "include[] a charterer that mans, supplies, and

23  navigates a vessel at the charterer's own expense or by the charterer's own procurement."

24  *Id.* § 30501(2).

25        Section 30529[5] creates a private cause of action that allows an owner to "bring a

26  civil action in a district court of the United States for limitation of liability" that "must be

27  ————————————————
    [4] Unless where otherwise noted, all Title references are to the United States Code.

28  [5] Unless where otherwise noted, all Section references are to Title 46 of the United States Code.

1  brought within 6 months after a claimant gives the owner written notice of a claim."

2  *Id*. § 30529(a).  When an owner commences such an action, "all claims and proceedings

3  against the owner related to the matter in question shall cease." *Id*.; (*See* Stay Order).

4  Rule F of the Supplemental Rules ("Rule F") carries out this provision by requiring that

5  "on application of the [owner] the court shall enjoin the further prosecution of any action

6  or proceeding *against the [owner] or the [owner's] property* with respect to any claim

7  subject to limitation in the action." Fed. R. Civ. P. F(3) (emphasis added).  However,

8  Section 30530 states the Act "does not affect the liability of an individual as a master,

9  officer, or seaman, even though the individual is also an owner of the vessel."

10  46 U.S.C. § 30530.

11  **2.       There is Sufficient Evidence that Mr. Bond is an Owner under**
            **the Act**

12

13      It is undisputed that Petitioners are owners of the MTI vessel within the meaning

14  of the Act.  Claimants claim Mr. Bond is not an owner of the MTI vessel and so "the Act

15  does not protect or limit [Mr.] Bond's liability in any way for this incident."

16  (Doc. 109 at 3).  Petitioners disagree, and cite to *In re Lava Ocean Tours Inc*. for the

17  proposition that "an individual who does not hold title to a vessel may nevertheless be

18  considered an 'owner' under the act" "depending on the circumstances of the case and the

19  relationship of the individual to the vessel at issue[.]"  (Doc. 110 at 4 citing 2019 WL

20  2330268, at *4 (D. Haw. May 31, 2019)).  In Petitioners' view, the nature of Mr. Bond's

21  relationship with the MTI vessel establishes Mr. Bond as an owner, which places him

22  within the scope of the Stay Order.  (*Id*. at 3–4).  The Court agrees with Petitioners.

23      In *Lava*, a corporate vessel owner brought an action to exonerate or limit its

24  liability under the Act when passengers on its vessel sustained injuries during an offshore

25  submarine volcanic event.  2019 WL 2330268, at *1–2.  Upon the corporate vessel's

26  application, the district court issued an order that restrained the prosecution of any and all

27  actions against the corporate vessel owner arising out of the incident.  *Id*. at *2.  The

28  vessel operator was not a party to the exoneration action.   When the claimants

1    subsequently filed suit in state court against the corporate vessel owner and third-party

2    vessel operator, the parties disagreed as to whether the stay applied to the third-party

3    vessel operator.  *Id.*   The claimants argued it did not because the third-party vessel

4    operator was neither identified in the stay order, nor was he an owner under the Act.  *Id.*

5          Relying on Ninth Circuit precedent, the district court in *Lava* explained a person is

6    an "owner" under the Act when his "relationship to the vessel is such as might reasonably

7    afford grounds upon which a claim of liability for damages might be asserted against

8    him" and that claim is "predicated on his status as the person perhaps ultimately

9    responsible for the vessel's maintenance and operation and a claim against which the

10   Limitation Act is designed to furnish protection."  *Id*. at *3–4 (quoting *Admiral Towing*

11   *Co. v. Woolen*, 290 F.2d 641, 645 (9th Cir. 1961)).  The district court concluded the third-

12   party vessel operator was an owner for the purposes of the Act because he "was

13   responsible for the maintenance and operation of the [v]essel on the date of the

14   [i]ncident", he was listed as an insured under the vessel owner's insurance policy, and the

15   claimants "[did] not dispute that [he] held a position of ultimate authority regarding the

16   conduct of the vessel during the voyage."  *Id*. at *4.  Therefore, the district court enforced

17   the stay to preclude further prosecution of the state court claims against the vessel

18   operator notwithstanding the fact he was a third-party that was not mentioned in the

19   language of the stay.  *Id*. at *4, 6.

20         The procedural posture and underlying facts of the instant matter are comparable

21   to those in *Lava*.  Petitioners seek to enforce the Stay Order against state actions that

22   were filed against the vessel operator—Mr. Bond—*after* Petitioners filed the Exoneration

23   Action in this Court.  Likewise, Petitioners reason Mr. Bond is an owner under the Act,

24   despite not holding title to the MTI vessel, because Mr. Bond "was a (frequent)

25   permissive vessel user who helped DeMore design and purchase the custom vessel"; "is

26   insured and covered for liability arising out of the use of the vessel"; and "was in sole

27   operation of DeMore's vessel on the date of the accident in place of DeMore, with his

28   authority."  (Doc. 110 at 4).

1    The Court agrees Mr. Bond should be treated as an "owner" for the purposes of

2  the Act under these circumstances.  Indeed, a main consideration in *Lava* that deemed a

3  third-party vessel operator an owner was the vessel operator's "undisputed control" over

4  the vessel "*at the time of the accident*."  2019 WL 2330268, at \*4 (emphasis added)

5  (distinguishing *Calkins v. Graham*, 667 F.2d 1292, 1294–95 (9th Cir. 1982) (finding a

6  vessel operator was not considered an owner under the Act because although he operated

7  and managed the vessel, he did not have "exclusive possession and control of the vessel"

8  at the time of the accident)).  The Court will follow suit and treat Mr. Bond as an owner

9  under the Act because it is undisputed that Mr. Bond operated the MTI vessel at the time

10  of the Collision, and Claimants filed the California Actions against Mr. Bond through his

11  capacity as the operator.  (Docs. 106-2 at ¶ 9–14; 106-3 at ¶¶ 13–17; 106-4 at ¶ 8, 14–20).

12    In sum, the Court will treat Mr. Bond as an owner under the Act because of his

13  relationship with the MTI vessel and role in the Collision.  *See Admiral Towing Co.*, 290

14  at 645.  Accordingly, the California Actions filed against Mr. Bond violate the Stay Order

15  due to Rule F's requirement that the further prosecution of "any action or proceeding

16  *against the [owner] or the [owner's] property* with respect to any claim subject to

17  limitation in the action" shall be enjoined.  Fed. R. Civ. P. F(3) (emphasis added).[6]

18    **B.    The California Actions Should be Stayed**

19    Having settled that the California Actions violate the Stay Order, the Court now

20  turns to the parties' requested relief.  Claimants suggest the Court should stay the

21  California Actions and proceed with the final pretrial conference in the Exoneration

22  Action.  (Doc. 109 at 6).  Petitioners argue the final pretrial conference should remain

23  vacated until the California Actions are dismissed and/or procedurally joined to the

24  Exoneration Action.  (Doc. 110 at 7).  Claimants propose the appropriate procedure.

25    Federal courts are vested with original jurisdiction over all cases of admiralty and

26  maritime jurisdiction.  U.S. Const. art. III, § 2.  28 U.S.C. § 1333 codifies this exclusive

27

28  [6] Because the Court finds the Stay Order applies to Mr. Bond as an owner, the Court need not address the parties' arguments as to whether Mr. Bond is a "crew" member within the language of the Stay Order or Petitioner in this action.

1    federal jurisdiction, but "sav[es] to suitors in all cases all other remedies to which they

2    are otherwise entitled," including the right to a jury trial for common law and statutory

3    claims.  28 U.S.C. § 1333(1); *see Lewis v. Lewis & Clark Marine, Inc.*, 531 U.S. 438,

4    443–44 (2001).  "Thus, the saving to suitors clause preserves remedies and the concurrent

5    jurisdiction of state courts over some admiralty and maritime claims." *Lewis*, 531 U.S. at

6    445.  When 28 U.S.C. § 1333 operates along the Limitation of Liability Act and Rule F,

7    "[t]here is an inherent tension between the [a vessel owner's] right to seek limitation of

8    liability in federal court under the Limitation of Liability [] Act [] and [a victim's] right to

9    seek a jury trial in state court pursuant to the 'saving to suitors' exception to federal

10   admiralty jurisdiction[.]" *Matter of Martz*, 2023 WL 4157174, at *1 (D. Alaska June 23,

11   2023) (citing *Lewis*, 531 U.S. at 450–51).

12          To balance these competing rights, district courts enjoy discretion to stay related

13   state actions "or otherwise to shape the limitation proceedings in a manner that promotes

14   the purposes of the Act." *Paradise*, 795 F.2d at 763.  For example, the Ninth Circuit has

15   held that "a district court has discretion to stay a state court action against a ship's captain

16   and crew until the owner's limitation action is completed." *Churchill v. The F/V Fjord*, 5

17   F.3d 374, 376 (9th Cir. 1993) (citing *Paradise,* 795 F.2d at 763).  "[T]he reason for

18   requiring the limitation proceeding to be completed first is to permit the vessel owner to

19   receive the benefit of his insurance." *Paradise*, 795 F.2d at 762 (quoting *Olympic

20   Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230, 235 n. 17 (5th Cir. 1969)).[7]

21          Here, the Court must reconcile the conflict between the parties' competing rights.

22   On one hand, Claimants urge they filed the California Actions to preserve their rights to

23   wrongful death actions before the maritime statute of limitations expired, especially since

24

25   ―――――――――――――
     [7] There are two scenarios in which a district court's discretion is narrowly circumscribed
     and it should not disturb a claimant's state court action from moving forward: (1) where a

26   single claimant is involved; or (2) where the aggregated claims total less than the
     limitation fund.  *Paradise Holdings*, 795 F.2d at 761; *see also Lewis*, 531 U.S. at 451

27   (citing *Langnes v. Green*, 282 U.S. 531 (1931) and *Lake Tankers Corp. v. Henn*, 354 U.S.
     147 (1957)).  Neither party argues that either exception applies here.  Even more, state

28   court injury actions may proceed only if the parties enter into requisite stipulations. *See
     Newton v. Shipman*, 718 F.2d 959, 962 (9th Cir. 1983).  The parties do not indicate they
     have entered into any such stipulations.

1   exoneration actions do not result in tolling.   (Doc. 109 at 6 citing 3 Benedict on

2   Admiralty 2–20 (7th ed.) ("[T]he pendency of a limitation of liability proceeding does not

3   suspend or prevent the running of time under a statute of limitation of actions.")).   On the

4   other hand, Petitioners represent Mr. Bond is an insured under the general liability policy

5   on the MTI vessel and covered for liability arising out of the use of the MTI vessel.

6   (Doc. 110 at 2, 4).   Petitioners argue that allowing the California Actions to

7   simultaneously go forward with this action would prejudice Petitioners because it would

8   permit Claimants to "get a verdict against DeMore in the instant action and then tak[e] a

9   second bite at DeMore's [insurance] policy in [] state court actions[.]"   (Doc. 110 at 6).

10          The Court concludes the proper resolution is to stay the California Actions until

11   the proceedings in the Exoneration Action are completed.   *See Paradise,* 795 F.2d at 763.

12   In any event, Claimants indicate they are amenable to staying the California Actions and

13   proceeding with the pretrial conference in the Exoneration Action.   (Doc. 109 at 6).

14   Furthermore, Petitioners' proposal to procedurally join the California Actions—which are

15   for wrongful death and survival damages—with the Exoneration Action is inappropriate

16   because "the scope exclusive federal jurisdiction is proportional to the federal interest in

17   protecting the vessel owner's right to seek limitation of liability." *Lewis*, 531 U.S. at 453.

18   The Act does not grant vessel owners a right to obtain exoneration from liability in

19   federal court where limitation of liability is not at issue.   *Id*. at 452–53.

20   **III.   Conclusion**

21          The Court will treat Mr. Bond as an "owner" under the Act because of his

22   relationship with the MTI vessel and his undisputed control over the MTI vessel at the

23   time of the Collision.   *See Lava*, 2019 WL 2330268, at *4; *see also Admiral Towing Co.*,

24   290 at 645.   It follows that the California Actions filed against Mr. Bond violate the Stay

25   Order despite Mr. Bond not being a party to the Exoneration Action or expressly

26   identified in the Stay Order.   *Lava*, 2019 WL 2330268, at *4.   Thus, the Court will

27   enforce the Stay Order to preclude further prosecution of the California Action pending

28   resolution of the Exoneration Action.

Accordingly,

**IT IS ORDERED** granting Petitioners' request that the Court's May 21, 2021, Stay Order applies to Mr. Brandon Bond as an "owner" under the Limitation of Liability Act.

**IT IS FURTHER ORDERED** that pursuant to Rule 16(e) of the Federal Rules of Civil Procedure, the Final Pretrial Conference is reset for **February 8, 2024, at 10:00 a.m.** in Courtroom 605, Sandra Day O'Connor United States Courthouse, 401 W. Washington St., Phoenix, Arizona, 85003-2151.

**IT IS FURTHER ORDERED** amending deadlines as follows:

1. The parties shall jointly prepare a Joint Proposed Final Pretrial Order and file it with the Court no later than 4:00 p.m. on January 18, 2024; and

2. The parties shall file and serve all motions in limine no later than January 18, 2024. Responses to motions in limine shall be filed on or before January 25, 2024.

**IT IS FINALLY ORDERED** affirming the remainder of the original order setting Final Pretrial Conference (Doc. 105).

Dated this 12th day of December, 2023.

Honorable Diane J. Humetewa
United States District Judge